

**FILED**

**Margaret Botkins
Clerk of Court**

1:11 pm, 2/26/26

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| VAZHA GELASHVILI,<br><br>Petitioner,<br><br>VS.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT DENVER FIELD OFFICE DIRECTOR, *in his official capacity,* also known as, Rober Hagen,<br><br>SWEETWATER COUNTY SHERIFF, *in his official capacity*, also known as, John Grossnickle<br><br>Respondents. | Case No.  26-CV-00042-SWS |

### ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Vazha Gelashvili filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 on February 4, 2026. [ECF 1] The Court preliminarily reviewed the petition, ordered it served on Respondents, and ordered Respondents to show cause why the Petition should not be granted.  [ECF 9] The parties agreed a hearing was not necessary to decide Mr. Gelashvili's petition.  [ECF 15 p. 2]

### *BACKGROUND*

Mr. Gelashvili entered the United States in May of 2022 without inspection.  [ECF 1 p. 2; ECF 14 ex. 2 p. 2] United States Customs and Border Patrol detained Mr. Gelavishili and transferred him to ICE custody on May 16, 2022.  [ECF 14 ex. 2 p. 2] ICE released

Mr. Gelashvili on his own recognizance with monitoring on May 20, 2022. [ECF 14 ex. 2 p. 2] Mr. Gelashvili was placed in removal proceedings under 8 U.S.C. § 1182(a)(6)(A)(i) for having entered the United States without admission or inspection and later filed an application for asylum and withholding of removal on May 18, 2024. [ECF 1 p. 2] Mr. Gelashvili was granted a work authorization and issued a social security number. [ECF 1 p. 2]

Mr. Gelashvili obtained work as a truck driver. On February 1, 2026, stopped at a truck stop in Green River, Wyoming. [ECF 1 p. 3] Mr. Gelashvili reports that he took a shower inside the truck stop and when he returned to his truck, noticed a broken mirror.[1] [ECF 1 p. 3] Mr. Gelashvili requested a truck stop employee review any camera footage and the employee said the sheriff was required to check the footage. [ECF 1 p. 6] The responding officer detained Mr. Gelashvili and called ICE to initiate an immigration detainer. [ECF 1 p. 3]

Mr. Gelashvili filed this petition, arguing he is illegally detained under 8 U.S.C. § 1225(b). [ECF 1] Mr. Gelashvili argues 8 U.S.C. § 1226(a) applies to him and, therefore, he is entitled immediate release from detention. [ECF 1] He contends that immigration judges are refusing to conduct bond hearings, therefore ordering a bond hearing provides no relief. [ECF 1 p. 14]

---

[1] Mr. Gelashvili's report of the truck stop incident precipitating his re-detention differs from the information in the affidavit provided in Respondent's Response. [ECF 14 ex. 2] While the affiant states a Sweetwater County Sheriff's deputy "encountered Petitioner at or near Rock Springs, Wyoming in connection with an investigation into a commercial vehicle hit and run where Petitioner was at fault," there is nothing in the record to support the statement that Mr. Gelashvili was at fault, and it is at odds with Petitioner's statement of events. Respondent Grossnickle's Response supports Mr. Gelashvili's version of events. [ECF 13 p. 6] This contradiction is immaterial to the Court's analysis or the outcome of this petition.

In response,[2] Respondent conceded Mr. Gelashvili's case is legally indistinguishable from a case this Court considered in November of 2025, *Serrato v. ICE et al.*, No. 25-CV-245-SWS, ECF no. 23, Order Granting Petition for Writ of Habeas Corpus (November 18, 2025). There, the Court determined the petitioner, who had been in the country for years, was detained pursuant to § 1226(a), not § 1225(b)(2), and entitled to an individualized bond hearing. *Id.* Respondent urges this Court to reconsider its *Serrato* analysis considering a recent panel decision out of the Fifth Circuit, *Buenrostro-Mendez v. Bondi et al.*, 2026 WL 323330 (5th Cir. Feb. 6, 2026). Respondent also argues that, even if this Court rejects the Fifth Circuit's analysis, it should not order Petitioner released and returned to New Jersey. [ECF 14 pp. 4-5] Rather, a bond hearing before an immigration judge would be the appropriate remedy. [ECF 14 p. 5]

Mr. Gelashvili filed a reply. [ECF 15] In his reply, he argues this Court retains jurisdiction over the case despite his transfer out of the district. [ECF 15 p. 2] He further contends the Fifth Circuit's panel decision is not binding and contrary to the great weight of decisions from district courts around the country and the Seventh Circuit, the only other circuit court to address the issue. [ECF 15 p. 3] He contends his application for asylum is a request for protection under an unrelated statutory provision and he is not "seeking admission" at a port of entry as is required in § 1225(b)(2)(A). [ECF 15 pp. 3-4] Finally, he argues immediate release or a bond hearing with a status report guardrail are the

---

[2] Respondent, the Sweetwater County Sheriff, also responded to the Petition. [ECF 13] He argues the case against him is now moot because Mr. Gelashvili is no longer housed in the Sweetwater County Detention Center. [ECF 13 p. 14] He nevertheless offers a brief to the Court suggesting how to analyze the issue. As discussed, Mr. Gelashvili properly filed this petition in the District of Wyoming and properly named his custodians—the case is not moot.

appropriate remedies in his case. [ECF 15 p. 5] Petitioner submitted an affidavit from a twenty-year immigration law practitioner and former ICE lawyer who suggests that immigration judges who grant bonds and question government positions are reassigned and replaced by judges who systematically deny bonds based on pretextual rationale. [ECF 15 p. 7; ECF 15 ex. 1] Mr. Gelashvili suggests this comports with ICE's recent defiance and violation of court orders. [ECF 15 p. 5] Thus, Mr. Gelashvili concludes he should not be placed into a process designed to produce the appearance of due process but instead ensuring continued detention. [ECF 15 p. 6] He argues immediate release is appropriate or, alternatively, a bond hearing with a required status report following the hearing. He contends he is a good candidate for ankle monitoring or a higher bond. [ECF 15 p. 6]

## DISCUSSION

When the Court reviewed Mr. Gelashvili's petition, it ordered Respondents to maintain his presence within the district. [ECF 9] Unbeknownst to the Court, after filing his petition but before the Court issued its order, the Government moved Mr. Gelashvili to a facility in Colorado. [ECF 14 ex. 2 p. 4] Generally, jurisdiction over a § 2241 habeas petition rests in the district where the petitioner is located. 28 U.S.C. § 2241(a). However, Mr. Gelashvili was confined in the District of Wyoming when he filed his petition, "and '[i]t is well established that jurisdiction attaches on the initial filing for habeas corpus relief' and 'is not destroyed by a transfer of the petitioner.'" *Serna v. Commandant, USDB-Leavenworth*, 608 F. App'x 713, 714 (10th Cir. 2015) (quoting *Santillanes v. U.S. Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985)); *see also e.g., Ex parte Endo*, 323 U.S. 283, 306, 65 S. Ct. 208, 220, 89 L. Ed. 243 (1944) (holding the district court did not lose

jurisdiction over the case when petitioner was transferred out of the jurisdiction post-filing and may direct the writ to any respondent within the court's jurisdiction who has legal authority to effectuate the writ); *Rumsfeld v. Padilla*, 542 U.S. 426, 441, 124 S. Ct. 2711, 2721, 159 L. Ed. 2d 513 (2004) (reaffirming the holding in *Endo*); *Arostegui-Maldonado v. Baltazar,* 794 F. Supp. 3d 926, 948-50 (D. Colo. 2025); *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 446 (3d Cir. 2021) (holding that a district court retains jurisdiction over a properly filed habeas petition where the petitioner is transferred outside the jurisdiction post-filing); *Khalil v. Joyce*, 777 F. Supp. 3d 369, 398 (D.N.J.), <u>motion to certify appeal granted,</u> 777 F. Supp. 3d 411 (D.N.J. 2025) (analyzing jurisdiction where petitioner was in the District of New Jersey when the petition was filed and then transferred to Louisiana; concluding the United States District Court for the District of New Jersey retained jurisdiction because petitioner was in New Jersey when the petition was filed and had named the Secretary of Homeland Security, which supervises ICE, as a respondent). Thus, the Court has jurisdiction over this matter.

    The Immigration and Nationality Act (INA) contains two mechanisms for detaining noncitizens pending removal proceedings. Under § 1225(b)(2)(A), the noncitizen who is "seeking admission" is subject to mandatory detention. 8 U.S.C. § 1225(b)(2)(A) ("in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained.") Noncitizens detained under § 1225 are not entitled to bond hearings. *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). Under § 1226, noncitizens arrested and detained "on a warrant by the Attorney General" are eligible for

release on bond or conditional parole. 8 U.S.C. § 1226(a). These noncitizens are entitled to an individualized bond hearing before an immigration judge at the outset of their detention. *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). There are exceptions to bond or parole eligibility for noncitizens with certain criminal histories or charges. 8 U.S.C. § 1226(c).

As the Fifth Circuit noted, before 1996 and between 1997 and 2025, "successive presidential administrations and many immigration judges treated unadmitted [noncitizens] as being subject to § 1226(a) rather than § 1225(b)(2)." *Buenrosto-Mendez*, ---F.4th ----, 2026 WL 323330, *1-3 (5th Cir. Feb. 6, 2026). In July of 2025, the Department of Homeland Security began detaining unadmitted noncitizens pursuant to § 1225(b)(2)(A) rather than § 1226(a). *Id.* This has resulted in thousands of cases in federal courts from petitioners seeking writs of habeas corpus. The district courts found in favor of the petitioners in almost all the cases. *Id.* at *3 (citing *Barco Mercado v. Francis*, No. 25-cv-6582, ⸺ F. Supp. 3d ⸺, ⸺, 2025 WL 3295903, at *13 (S.D.N.Y. Nov. 26, 2025) which lists 350 decisions that found for the habeas petitioner); *See also* [ECF 1 p. 9] (referencing Politico article finding that district courts have ordered bond hearings in more than 1,600 cases).

On February 6, 2026, a split panel on the Fifth Circuit Court of Appeals determined DHS's new interpretation of the Immigration and Nationality Act was lawful. *Buenrostro-Mendez*, at *1. The Fifth Circuit's panel decision in *Buenrostro-Mendez* is not binding on this Court, and, on review, the Court finds its reasoning unpersuasive. The District of Utah thoroughly analyzed and rejected the reasoning in the Fifth Circuit's decision. *Jose Luis*

*Carbajal v. Paul J. Wimmer, Sheriff of Tooele Cnty., in his official capacity.*, No. 2:26-CV-00093, 2026 WL 353510 (D. Utah Feb. 9, 2026). The court in *Carbajal* determined the *Buenrostro* court failed to consider the entire structure of the INA and how it relates to conditional or humanitarian parole which could lead to unintended consequences. *Id*. at *2-4. The Utah court concluded that its interpretation, which is consistent with this Court's ruling in *Serrato* and other courts around the country, preserved "Congressional intent by maintaining a distinction between the various types of parole available under the INA." *Id*. at *4. The Utah court noted the Fifth Circuit's analysis of *Jennings* was not persuasive. *Carbajal*, at *5. It further opined that the Fifth Circuit's legislative history analysis was unpersuasive because it cherry-picked individual sentences of regulations to support its conclusion when the regulation read in full supported the opposite conclusion. *Id*. at *5-6. The Utah court found some aspects of the *Buenrosto* decision more persuasive, but concluded those aspects were limited to a different class of noncitizens or did not address tension between the DHS's current interpretation of § 1225(b)(2)(A) and the Laken Riley Act. *Id.* at *7-8. Finally, the Court in Utah noted the Fifth Circuit did not address the broader constitutional concerns about the "largest detention initiative in American history." *Id*. at *8 (quoting *Buenrosto-Mendez*, ---F.4th at ---, 2026 WL 323330 at *10 (Douglas, J., dissenting).

The Court agrees with Judge Campbell's analysis in *Carbajal,* and it generally matches this Court's prior analysis in *Serrato*. *See also e.g., Hernandez v. Baltazar*, No. 26-CV-0524-WJM, 2026 WL 507518, at *4 (D. Colo. Feb. 24, 2026) ("not only is [the court] not bound by the Fifth Circuit's intervening decision, it is singularly unpersuaded by

it."); *Singh v. Castro, et al.*, No. 2:26-CV-00194 KWR-SCY, 2026 WL 508176, at *4 (D.N.M. Feb. 23, 2026) (rejecting Fifth Circuit's analysis); *Dinga v. Castro, et al.,* No. 2:25-CV-01265 KWR-DLM, 2026 WL 508174, at *4 (D.N.M. Feb. 23, 2026) (same); *Hernandez-Perez v. Bondi, et al.*, No. 2:26-CV-00190 KWR-SCY, 2026 WL 483320, at *4 (D.N.M. Feb. 20, 2026) (same). The Court sees no reason to depart from the analysis it set forth in *Serrato* and adopts that analysis here. The INA statutes were written and arranged so that § 1225 primarily applied to noncitizens who were encountered at or near their entry into the United States (whether lawful or unlawful), while § 1226 primarily applied to noncitizens who were already within the interior of the United States, often, like Mr. Gelashvili, for long periods of time. *See, e.g., Nielsen v. Preap*, 586 U.S. 392, 396-97 (2019) (stating that § 1226(a) "applies to most such aliens" who are "present in the country" but removable); *Jennings*, 583 U.S. at 289 (§ 1226(a) and (c) "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings"); *Alvarez Ortiz v. Freden*, --- F. Supp. 3d ---, 2025 WL 3085032, at *1 (W.D.N.Y. Nov. 4, 2025) ("8 U.S.C. § 1225, covering noncitizens when they arrive at the border or when they enter illegally and are caught very close to the border, and 8 U.S.C. § 1226, covering noncitizens who successfully have entered the United States—whether legally or illegally").

For decades, the Government's relevant agencies operated under and enforced this statutory scheme. *See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are

present without having been admitted or paroled … will be eligible for bond and bond redetermination."). The Court understands DHS, supported by the Board of Immigration Appeals, has recently changed its decades-long approach, but neither Respondents here nor the Fifth Circuit's recent decision in *Buenrostro*, persuaded this Court that the prior understanding and application of the statutory scheme was erroneous or broken. "The Court joins the many other courts nationwide who have declined to accept Respondents' novel new interpretation of decades-old law." *Hernandez v. Baltazar*, No. 1:25-CV-03094-CNS, 2025 WL 2996643, at *7 (D. Colo. Oct. 24, 2025) (collecting cases). Consequently, the Court concludes 8 U.S.C. § 1226(a) better applies to Mr. Gelashvili's case, and it guarantees him an individualized bond hearing, which he has not received.

Mr. Gelashvili contends the appropriate remedy is immediate release from detention. The Petitioner bears the burden of persuading the Court he is entitled to relief or a remedy. 28 U.S.C. § 2241. Section 1226(a) gives the Respondents discretion to detain a noncitizen, release the noncitizen on bond, or place them on parole. It does not expressly provide a statutory right to immediate release. 8 U.S.C. § 1226(a). While Mr. Gelashvili has expressed concerns about the process he will receive during a bond hearing, his evidence is based on anecdotal evidence from immigration courts on the other side of the country. He has not shown that ordering a bond hearing pursuant to the governing statute will violate his right to due process. Mr. Gelashvili's detention under § 1226(a) lawfully entitles him to an individualized bond hearing whereupon it is his burden to show he does not pose a danger and is not a flight risk. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021) ("To secure release, the alien must show that he does not pose a danger to the

community and that he is likely to appear for future proceedings.") (citing 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8) (2020); *In re Adeniji*, 22 I. & N. Dec. 1102, 1113 (BIA 1999)). The Court finds such to be the appropriate remedy in this case. *See Hernandez v. Baltazar*, No. 1:25-CV-03094-CNS, 2025 WL 2996643, at *8 (D. Colo. Oct. 24, 2025) (granting petition for habeas corpus and requiring the respondents to provide the petitioner with bond hearing). At this time the Court will not presume that a party or counsel before it will fail to comply with its orders. If such trust is mistaken the Court will address it.

Finally, the Court recognizes this issue remains unsettled. The Circuit Courts are picking up and grappling with the same analysis undertaken by the district courts over the last eight months. As Judge Campbell noted,

> The end result may be that a higher court overturns this court's ruling. But if this court has gotten the law wrong, its error will have resulted in a handful of immigrants being allowed to remain free from detention on bond pending a final decision in their removal proceedings after a determination that they do not pose a flight risk or a danger to the community—in other words, a result that merely extends the status quo from the past three decades. If, however, other courts eventually determine that it is DHS who has gotten the law wrong, then the agency will have unlawfully detained tens of thousands, if not hundreds of thousands, of people.

*Carbajal*, at *8.

## *CONCLUSION*

The circumstances of Mr. Gelashvili's detention establish that he is more properly being detained under 8 U.S.C. § 1226(a) rather than 8 U.S.C. § 1225(b)(2). He has not received the individualized bond hearing guaranteed to him by § 1226(a). To correct this

due process deficiency, the Court will order that he receive such a hearing in an expeditious manner.

**IT IS THEREFORE ORDERED** that Vazha Gelashvili's Petition for Writ of Habeas Corpus [ECF 1] is **GRANTED**. Respondents shall provide an individualized bond hearing under 8 U.S.C. § 1226(a) to Mr. Gelashvili **within seven (7) calendar days** of the date of this Order.

**IT IS FURTHER ORDERED** that if Respondents fail or refuse to provide Mr. Gelashvili with an individualized bond hearing under § 1226(a) within seven (7) calendar days of this Order, Respondents shall immediately release Mr. Gelashvili from detention upon his posting of a $1,500 bond. See 8 U.S.C. § 1226(a)(2).

**IT IS FURTHER ORDERED** that Respondents shall file a status report **within ten (10) calendar days** of the date of this Order certifying compliance. The status report shall identify where and when the individualized bond hearing occurred, whether release on bond was granted or denied, and the reasons for any such denial. Alternatively, if Respondents have failed to provide the required expedited bond hearing, the status report shall indicate the date, time, and circumstances of when they released Mr. Gelashvili from detention. The Court shall retain jurisdiction over this matter to the extent necessary to ensure this Court's Order is carried into effect.

Dated this 26th day of February, 2026.

_____
Scott W. Skavdahl
United States District Judge